## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SOUTHERN NAZARENE UNIVERSITY, a not-for-profit, corporation,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>HES FACILITIES MANAGEMENT, LLC., a limited liability company,<br><br>　　　　　Defendant. | Case No.:<br><br><br><br>**[JURY TRIAL REQUESTED]** |

## COMPLAINT

**COMES NOW**, the Plaintiff, Southern Nazarene University ("SNU"), by and through the undersigned counsel, and brings this Complaint against Defendant HES Facilities Management, LLC ("HES") and alleges the following claims and supporting facts:

## INTRODUCTION

1.     This case arises from the environmental misconduct and systemic professional failures of Defendant HES Facilities Management, LLC ("HES"). Entrusted with the care of one of Oklahoma's most historic and symbolically significant private university campuses, HES abused that trust by deploying HYVAR X-L IVM Herbicide ("HYVAR"), a federally restricted-use soil sterilant, in direct violation of federal law, Oklahoma statutes, and clear contractual obligations. Applied in areas where it was expressly prohibited, HYVAR decimated mature landscaping, poisoned soil, and inflicted severe and lasting damage to the physical, aesthetic, and ecological integrity of Southern

1

Nazarene University's ("SNU") Bethany campus, an institution whose grounds are integral to its heritage, identity, and public mission.

2.      SNU justifiably relied on HES's representations of expertise and professionalism in executing a high-trust assignment involving dangerous, regulated substances. Yet when signs of unexplained environmental decline emerged in late spring and early summer of 2023, HES chose obfuscation over accountability. Rather than cooperate with its client, HES embarked on a months-long campaign of concealment, deflection, and bad-faith stonewalling.

3.      Despite repeated and direct inquiries from SNU, HES failed to disclose its use of HYVAR, refused to produce application logs, and withheld critical records, all while knowing that it alone had exclusive control over the chemical treatments performed on SNU's property. Only through independent investigation in 2024 did SNU uncover the truth: *HYVAR had been deployed unlawfully and in ways that flagrantly violated federal pesticide labeling requirements, Oklahoma licensing regulations, and the standards of basic professional integrity owed to a client whose land was entrusted to HES's care.*

4.      As a direct result, SNU has suffered more than $1,000,000 in documented damages, including widespread destruction of tree canopies, sterilization of soil, and ecological losses so extensive that replanting may be infeasible for years to come. Because HYVAR remains active in the soil for prolonged periods, SNU's losses continue to compound and defy straightforward remediation. HES's conduct was not merely negligent, it was deceptive, willful, and environmentally reckless. Therefore, pursuant to 23 O.S. § 72, SNU seeks treble damages under Oklahoma law for the wrongful injury to timber, as

well as punitive and declaratory relief proportionate to the scale and severity of the misconduct. This action seeks to hold HES fully accountable for the environmental, contractual, and institutional harm it has caused, and to ensure that such violations do not go unanswered.

## I. JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     Plaintiff SNU is an Oklahoma not-for-profit corporation organized under the laws of Oklahoma with its principal place of business located in Bethany, Oklahoma.

7.     Upon information and belief, Defendant HES is a Tennessee limited liability company with its principal place of business in Knoxville, Tennessee. Upon information and belief, none of HES's members are citizens of Oklahoma.

8.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and the property that is the subject of the action is situated herein.

## II. PARTIES

9.     Plaintiff incorporates by reference all previous paragraphs as though they were set out full herein.

10.     Plaintiff SNU is a regionally accredited, private liberal arts university located in Bethany, Oklahoma. Founded in 1899, SNU is affiliated with the Church of the

Nazarene, Inc., and has served for over a century as a center of higher learning rooted in Christian values and service.

11.    SNU is the fee simple owner of the real property, landscaping, and green spaces located on its Bethany, Oklahoma campus. The grounds include extensive tree-lined walkways, commemorative gardens, landscaped flowerbeds, a disc golf course, public benches, and a several of memorial and commemorative trees, along with a large central fountain and the iconic "Lamp of Learning." These features contribute to the university's distinct visual character and atmosphere, and serve as daily touchpoints for student life, institutional heritage, and public gatherings.

12.    Defendant HES is a facilities management company which contracted with SNU to provide lawn maintenance and herbicide application services on SNU's campus.

### III. FACTUAL BACKGROUND

13.    Plaintiff incorporates by reference all previous paragraphs as though they were set out full herein.

14.    In 2019, SNU entered into a written contract with WFF Facility Services, a predecessor entity who was later merged with or acquired by HES. Exhibit 1.

15.    A true and correct copy of the contract is attached as Exhibit 2.

16.    Under the terms of the contract, the parties are to apply Oklahoma law. *Id*.

17.    Upon assuming the contract, HES agreed to maintain the SNU campus grounds and perform herbicide application safely, lawfully, and in a manner consistent with industry and regulatory standards.

18.    Under the contract, HES expressly or impliedly warranted that it would apply only those chemical agents suited for use in university settings and that it would not employ any substances in violation of labeling restrictions or state licensing requirements. Exhibit 2.

19.    Under Section 2.4 of the contract, HES expressly warranted that it would train all personnel in the performance of their duties. *Id*.

20.    Pursuant to the contract, HES assumed responsibility for applying herbicides in a safe and effective manner, using products appropriate for use in a college campus setting and in accordance with applicable laws, product labeling, and industry standards.

21.    In late spring and early summer 2023, SNU officials began observing widespread, unexplained vegetation damage, including the decline and death of trees, shrubs, and groundcover in various locations across campus. Exhibit 3.

22.    In late July 2023, SNU discovered at least one box of HYVAR in a storage area exclusively maintained and controlled by HES on SNU's campus. *Id*.

23.    HYVAR is a federally restricted-use herbicide that is specifically prohibited for use in residential, recreational, or landscaped areas, including walkways, parking lots, and around trees such as oaks, pines, elms, redbuds, and maples, all of which are present on SNU's campus. *See e.g.*, Exhibit 4 (HYVAR labeling and E.P.A. registration).

24.    Following the discovery of the discarded HYVAR container, SNU officials remained unaware that HYVAR had in fact been applied to campus grounds.

25.    Given the highly technical nature of herbicide-related environmental damage, coupled with the absence of access to HES's internal chemical application records,

SNU faced exceptional difficulty and expense in independently determining whether HYVAR had been used and whether it was the source of the observed deterioration.

26.    In response to the observed damage, SNU initiated direct months-long communications with HES officials to ascertain the cause of the damage.

27.    However, emails and other correspondence show that HES repeatedly deflected inquiries, provided vague or noncommittal responses, and withheld critical information, including application logs and chemical application details, that would have likely enabled SNU to identify the cause and extent of the damage.

28.    HES's pattern of evasive communication materially impeded SNU's investigation and delayed its discovery of the true source of the harm.

29.    Throughout early to mid-2023, central Oklahoma experienced severe drought conditions, among the driest on record, which significantly complicated efforts to determine the cause of widespread damage to SNU's landscape. University officials were initially uncertain whether the observed deterioration stemmed from drought-induced stress, inadequate irrigation, or an external contaminant.

30.    Compounding the uncertainty, the natural dormancy of vegetation during the fall and winter months further obscured the distinction between normal seasonal dieback and chemical-related injury. The subtle onset and overlapping timing masked telltale signs of environmental disruption.

31.    This combination of extreme drought and seasonal dormancy concealed the true extent and progression of the environmental damage, delaying accurate diagnosis. It was not until spring 2024, when unaffected vegetation began to recover while large

portions of SNU's campus remained barren, that SNU, through expert consultation and a visual analysis of distinctive injury patterns, concluded that HES had likely applied HYVAR or a similarly regulated soil sterilant in violation of federal labeling and applicable legal restrictions.

32.    During the course of communications, representatives from HES eventually admitted to SNU officials that a "sterilant" had been applied on campus grounds.

33.    However, despite repeated and direct requests from SNU, HES refused to identify the specific "sterilant" used or to produce corresponding application records. This refusal to disclose critical information, especially considering the known risks associated with soil sterilants and HES's exclusive control over herbicide operations, constituted a knowing concealment of material facts and further obstructed SNU's ability to timely diagnose and mitigate the damage.

34.    At all relevant times, HES maintained exclusive control of all herbicide applications and was contractually and professionally obligated to keep detailed records of chemical usage.

35.    SNU repeatedly inquired about the cause of the damage, including written and oral requests for disclosure of herbicide logs and treatment schedules. Rather than cooperating, HES stonewalled SNU's inquiries, offered misleading and incomplete information, and refused to produce documents that were exclusively in its possession and essential to diagnosing the cause of the damage.

36.    Due to the technical complexity of identifying herbicide-related damage and the latency between application and observable symptoms, SNU reasonably relied on HES's superior knowledge and professional responsibility to disclose its use of chemicals.

37.    Upon information and belief, HES actively concealed the improper use of HYVAR and withheld application records critical to SNU's ability to determine the source and scope of the environmental harm.

38.    Upon information and belief, HES knew that it had applied HYVAR in a manner expressly prohibited by law and labeling, including in locations and around tree species where its use is strictly barred, and deliberately withheld that fact to avoid liability.

39.    At no point did HES take responsibility for its actions or make a good faith effort to assist SNU in understanding or remedying the damage it had caused. Instead, HES took advantage of SNU's trust and lack of access to the relevant application data by stonewalling efforts to obtain transparency.

40.    HES had an affirmative duty to provide SNU with information concerning the chemicals it used on its campus not only under its contract, but under federal and state law, and its refusal to do so left SNU blindfolded in its efforts to protect its students, diagnose the cause, and mitigate further damage.

41.    HES's conduct constitutes a pattern of professional misconduct, including misrepresentation by omission, failure to adhere to professional norms governing pesticide use, and knowing concealment of material information. Its actions were not merely the product of a single negligent act but reflect a systemic breach of trust and sustained concealment aimed at avoiding accountability for unlawful practices.

42.     Upon information and belief, while SNU suffered mounting and irreversible environmental losses, HES chose to protect itself rather than fulfill its duty of good faith performance under the contract.

43.     HES's deceit and bad-faith conduct materially impaired SNU's ability to identify, mitigate, and respond to the damage, resulting in months of compounded harm.

44.     In mid to late 2024, HES affirmatively represented to SNU that it had retained a third-party company to assess the extent of damage caused on SNU's campus and assured SNU that a formal report would be prepared and shared.

45.     However, despite repeated and direct requests from SNU for the promised documentation, HES willfully refused to produce the report, thereby further obstructing SNU's efforts to investigate the harm, assess its losses, and pursue timely remediation.

46.     Upon information and belief, HES withheld the report because its findings would substantiate SNU's allegations and directly implicate HES as the party responsible for the extensive damage described in this *Complaint*.

47.     By October 2024, HES ceased all direct communication with SNU and instead engaged legal counsel ("lawyered up") and cut off any collaborative dialogue it had previously represented would occur.

48.     Upon information and belief, the HES personnel responsible for applying HYVAR on SNU's campus were neither properly trained nor licensed in accordance with applicable state and federal requirements governing restricted-use pesticides.

49.     Upon information and belief, HES's failure to ensure that only qualified applicators handled federally regulated herbicides such as HYVAR constitutes a gross

deviation from industry norms and regulatory obligations and directly contributed to the widespread environmental harm suffered by SNU.

50.    HES's conduct constitutes not only a breach of contract, but a knowing and dishonest failure to perform in good faith, in reckless disregard of its obligations and of the foreseeable harm to SNU's property. The result is that there are over $1,000,000 in continuing losses, degradation of SNU's campus environment, reputational damage, and the unnecessary destruction of mature trees and irreplaceable landscaping, all of which are directly traceable to HES's unlawful acts and deliberate concealment.

51.    HES's misconduct has resulted in the widespread and irreversible destruction of campus vegetation, including the death or severe decline of more than fifty mature trees, many of which were decades-old hardwoods such as oaks, maples, pines, elms, and redbuds, along with extensive damage to turf, ornamental shrubs, and the surrounding soil ecosystem. These were not merely ornamental plantings, but integral elements of SNU's historic and environmental landscape, representing decades of growth, care, and institutional heritage.

52.    Among the trees severely damaged was a cherished Redbud planted in solemn remembrance of the 168 lives lost in the 1995 bombing of the Alfred P. Murrah Federal Building. Accordingly, SNU's losses are not merely cosmetic; they represent the near irreversible destruction of natural and symbolic assets that cannot be replicated within a generation.

53.    As the damage progressed, many of the affected trees began to rot, losing structural integrity and posing an imminent safety hazard to students, faculty, and visitors

on campus. To mitigate the risk of falling limbs or complete tree collapse, SNU was forced to undertake emergency removal of numerous trees at substantial cost.

54.    The university hosts thousands of students annually through its undergraduate, graduate, and professional studies programs and maintains a well-known, carefully cultivated campus environment that reflects its commitment to excellence and tradition.

55.    Maintaining a well-kept and aesthetically beautiful campus is of paramount importance to SNU, as it is to virtually all brick-and-mortar universities whose reputations and recruitment efforts are closely tied to the appearance of their grounds.

56.    In the aftermath of the damage caused by HES's misconduct, SNU was forced to undertake extraordinary and costly measures to preserve its public image and avoid embarrassment during high-profile campus events such as commencement ceremonies, new student orientation, and recruitment events on campus.

57.    SNU's identity and ability to attract students, faculty, and philanthropic support is intimately tied to its campus environment. As a result of HES's misconduct, SNU incurred not only direct physical and financial losses, but suffered harm to its goodwill, donor trust, and public image during key recruiting periods.

58.    SNU's retained expert has determined, to a reasonable degree of scientific and professional certainty, that HYVAR was not only the direct cause of the environmental damage on SNU's campus, but also that HES applied HYVAR in a manner inconsistent with its labeling and regulatory restrictions.

59.    SNU's retained expert has determined, and will testify to a reasonable degree of scientific and professional certainty, that no other plausible cause accounts for the scope, pattern, progression, and persistence of the environmental damage observed on SNU's campus other than the misapplication of HYVAR.

60.    The expert will further testify that the nature and distribution of the damage are consistent with improper use of a soil sterilant such as HYVAR and are inconsistent with ordinary seasonal or environmental variation.

61.    As set forth in the product's official registration and labeling, attached hereto as Exhibit 4, HYVAR is expressly prohibited from use in residential, recreational, or landscaped settings, including areas with desirable vegetation, tree cover, or turf, as explained:

> "Injury or loss of desirable trees or other plants may result if HYVAR X-L IVM Herbicide is applied or equipment is drained or flushed on or near desirable trees or other plants, on aeras were their roots may extend, or in locations where the chemical may be washed or moved into contact with their roots . . . . Do not use HYVAR X-L IVM Herbicide in residential areas or around homes in areas such as lawns, driveways or parking lots. Do not use HYVAR X-L IVM Herbicide in recreational areas such as bike, jogging or golf cart paths, tennis courts, in or around homes, or in areas where landscape plantings could be anticipated."

Exhibit 4.

62.    The label further cautions against use near the root zones of hardwood species such as oaks, elms, and maples, and warns that improper application may result in permanent soil sterilization and the death of non-target plant life. *Id.*

12

63.     These restrictions are not advisory, they are mandatory regulatory conditions imposed by the Environmental Protection Agency under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) (7 U.S.C. §136-136y), and have the force of federal law.

64.     In addition, the EPA's Worker Protection Standard, codified at 40 C.F.R. Part 170, sets forth mandatory safety regulations for the use of Restricted Use Pesticides, including requirements for protective equipment, restricted entry intervals, recordkeeping, and, critically, mandatory training and certification for pesticide applicators. These federal regulations are designed to ensure that applicators understand the risks and restrictions associated with hazardous chemicals like HYVAR, and to prevent exactly the type of environmental damage that occurred on SNU's campus.

65.     Oklahoma law mirrors these federal safeguards through statutes and administrative regulations administered by the Oklahoma Department of Agriculture. Specifically, under 2 O.S. § 3-82(A)(1)(d), any individual who applies a Restricted Use Pesticide must be properly licensed by the state. This statutory requirement ensures that only qualified personnel engage in the use of dangerous herbicides and establishes a baseline duty of care enforceable under Oklahoma law.

66.     Additionally, the Oklahoma Administrative Code, particularly OAC 35:30-17-30, *et seq*., sets forth detailed regulations governing the application, storage, and supervision of herbicides within the state. These regulations require that applications be conducted in compliance with all label directions and in a manner that prevents off-target injury to desirable vegetation. Violations of these rules not only constitute administrative

offenses but also serve as evidence of negligence *per se* and gross disregard for public safety and environmental protection.

67.    HES's unauthorized and improper application of HYVAR, coupled with its deliberate failure to disclose that application to SNU, constitutes a reckless, willful, and unlawful disregard for both federal and Oklahoma environmental regulations, as well as the express legal obligations imposed by the product's EPA-approved labeling.

68.    HES's conduct further breached industry standards of care, and disregarded its contractual and professional duty to ensure transparency and safety in all chemical applications performed on SNU's campus.

69.    By virtue of its exclusive control over the application of hazardous chemicals and its superior access to herbicide records, HES stood in a position of trust and confidence relative to SNU.

70.    Upon information and belief, HYVAR's active ingredient, lithium salt of bromacil, can remain active in the soil for many months, with detectable values well beyond a year. This means SNU cannot simply replace the destroyed trees and vegetation and expect recovery; instead, the affected grounds are likely to remain incapable of sustaining new tree life for years to come.

71.    SNU asserts that HES's actions, inflicting lasting environmental damage and compounding it through a deliberate and deceitful coverup, warrant a forceful and punitive legal response commensurate with the gravity of the misconduct.

## IV. CLAIMS FOR RELIEF

### COUNT I – BREACH OF CONTRACT

72.    Plaintiff incorporates by reference all previous paragraphs as though they were set out full herein.

73.    A valid and enforceable contract existed between Plaintiff and Defendant for grounds maintenance services, including herbicide application.

74.    Defendant breached that contract as outlined above by applying a prohibited herbicidal agent in violation of labeling guidelines, regulations, and the contract's express and implied terms.

75.    As a direct and proximate result of Defendant's breach, Plaintiff has suffered substantial damages, including but not limited to the death and destruction of trees, grass, shrubs, and associated landscaping, as well as consequential loss related to campus aesthetics and property value, in an amount exceeding an estimated $1,000,000.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant HES Facilities Management, LLC for actual and consequential damages, attorney's fees, and such other and further relief as the Court deems just and proper.

### COUNT II – NEGLIGENCE

76.    Plaintiff incorporates by reference all previous paragraphs as though they were set out fully herein.

77.    Defendant owed Plaintiff a duty arising from the contract, applicable federal pesticide regulations, industry standards for herbicide application, and common law principles of ordinary care.

78.    Defendant owed Plaintiff a duty to perform all services, including herbicide application, with reasonable care, in accordance with industry standards, product labeling, and applicable laws and regulations.

79.    Defendant breached this duty, including, but not limited to, by:

    i.    Selecting and applying HYVAR in locations and under conditions expressly prohibited by the product's federally mandated labeling;

    ii.    Failing to properly train, supervise, and monitor its employees or applicators;

    iii.    Failing to disclose its use of HYVAR despite possessing exclusive control over herbicide operations on campus;

    iv.    Refusing to provide timely or accurate herbicide records, thereby preventing Plaintiff from mitigating the damage in a timely manner; and,

    v.    Failing to use reasonable care in the performance of its services.

80.    Defendant's conduct constituted negligence and gross deviation from accepted landscaping and herbicide application practices.

81.    HES's unauthorized use of HYVAR, a Restricted Use Pesticide, by unlicensed and untrained personnel in a manner contrary to the EPA-approved label and FIFRA constitutes negligence *per se*. The statutes and regulations violated were enacted

for the purpose of preventing precisely the type of environmental and economic harm sustained by SNU.

82.    As a direct and proximate result, Plaintiff sustained substantial and ongoing physical, environmental, and economic damages, including the death of irreplaceable mature trees, widespread soil sterilization, loss of campus aesthetics, and significant financial expenditures related to emergency tree removal and remediation efforts.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant HES Facilities Management, LLC for actual damages, attorney's fees, and such other and further relief as the Court deems just and proper.

## COUNT III – RECKLESSNESS & GROSS NEGLIGENCE

83.    Plaintiff incorporates by reference all previous paragraphs as though they were set out fully herein.

84.    HES owed SNU a duty to disclose material facts regarding its herbicide use as the sole provider responsible for chemical application services on campus.

85.    HES knowingly concealed the application of HYVAR, a federally restricted herbicide, in areas where its use is expressly prohibited.

86.    In response to direct inquiries from SNU, HES made intentionally misleading statements, failed to disclose application logs, and knowingly withheld critical facts concerning its use of HYVAR.

87.    HES made these misrepresentations and omissions with the intent to mislead SNU and prevent discovery of the cause of ongoing environmental damage.

88.     SNU justifiably relied on HES's representations, given HES's exclusive control over herbicide operations and its contractual duty to act in good faith and disclose chemical usage.

89.     As a direct and proximate result of HES's fraudulent conduct, SNU suffered significant and ongoing property, economic, and reputational damages in excess of $1,000,000.

**WHEREFORE**, Plaintiff requests judgment for actual and punitive damages, attorney's fees, and any other relief deemed appropriate.

## COUNT IV – FRAUDULENT MISREPRESENTATION
## AND CONCEALMENT DURING CONTRACT PERFORMANCE

90.     Plaintiff incorporates by reference all previous paragraphs as though they were set out fully herein.

91.     Defendant HES, while actively performing under the parties' custodial and grounds maintenance contract, owed Plaintiff a duty to act in good faith, to disclose material facts concerning its use of chemicals on campus, and to refrain from knowingly misleading Plaintiff regarding matters exclusively within its control.

92.     During the course of performance, and in response to direct inquiries from SNU about unexplained environmental damage, HES made affirmatively misleading statements, omitted material facts, and knowingly concealed the fact that it had applied HYVAR—a federally restricted herbicide—in prohibited areas in violation of product labeling and applicable law. Despite having exclusive access to herbicide logs and internal

records, HES refused to disclose its actions and instead engaged in a sustained pattern of evasive and deceptive conduct.

93.     HES made these misrepresentations and omissions with the intent to mislead SNU and prevent discovery of the true cause of the environmental damage, thereby hindering mitigation efforts and avoiding accountability. SNU justifiably relied on HES's false and incomplete representations given its limited access to chemical records and HES's exclusive control of herbicide operations.

94.     As a direct and proximate result of HES's fraudulent conduct during contract performance, SNU suffered significant and ongoing property, economic, and reputational damages in excess of $1,000,000.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant HES Facilities Management, LLC, for actual and punitive damages, attorney's fees, and such other and further relief as the Court deems just and proper.

## COUNT V – STATUTORY CLAIM FOR WRONGFUL INJURY TO TIMBER (23 O.S. § 72)

95.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

96.     Plaintiff seeks statutory damages pursuant to 23 O.S. § 72(A) in an amount of not less than three times, and up to ten times, the fair value of the timber and landscaping injured or destroyed because of Defendant's wrongful and unlawful herbicide application. This relief is remedial in nature, not punitive, and authorized by Oklahoma law as

confirmed in *Sudbury v. Deterding*, 2001 OK 10, 19 P.3d 856 (Okla. 2001); *Short v. Jones*, 1987 OK 87, 613 P.2d 452 (Okla. 1987); *See also*, *Young v. Spencer*, 2017 OK CIV APP 58, 405 P.3d 701 (Okla. Ct. Civ. App. 2017).

97.     Defendant HES knowingly and unlawfully caused the injury, death, and destruction of over fifty mature hardwood trees and ornamental landscaping shrubs located on Plaintiff's Bethany, Oklahoma campus.

98.     These trees, which included oaks, maples, elms, pines, and redbuds are "timber" as defined by Oklahoma law under 2 O.S. § 16-2(12), formerly codified at 2 O.S. § 1301-102.

99.     2 O.S. § 16-2, defines timber to include "live and dead trees and the profit in any live and dead trees including, but not limited to, bark, foliage, wood, vines, firewood, crossties, and shrubbery."

100.     Defendant's actions, applying HYVAR, a federally restricted-use herbicide, in areas where its use is strictly prohibited, constitute a wrongful injury to timber within the meaning of 23 O.S. § 72(A). Defendant applied the herbicide in close proximity to trees, shrubs, and lawns in violation of its labeling and environmental regulations, resulting in irreversible harm to campus vegetation.

101.     The injury was neither casual nor involuntary, nor did Defendant act under any good faith belief that the land or vegetation belonged to it. On the contrary, Defendant had exclusive control over herbicide application under the parties' contract, and subsequently concealed its actions, failed to disclose application logs, and misrepresented or withheld information that could have mitigated the harm.

102.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered extensive damages, including the economic and sentimental loss of mature trees; degradation of soil and the surrounding ecosystem; the forced emergency removal of rotting trees to prevent safety hazards; aesthetic damage necessitating artificial remediation efforts such as painting dead grass to preserve campus appearance during key events; and an overall diminishment in the value, utility, and visual appeal of the university campus.

103.    Accordingly, Plaintiff is entitled to damages of *not less than three* (3) times and up to ten (10) times the amount necessary to compensate for the actual detriment caused by the wrongful injury to timber, pursuant to 23 O.S. § 72(A).

104.    Given that SNU has sustained direct and consequential damages estimated in excess of $1,000,000.00, including loss of mature trees, foliage, long term or permanent soil degradation, and campus-wide remediation efforts, the minimum statutory recovery under Oklahoma law exceeds $3,000,000.00.

105.    Plaintiff is also entitled to recover all costs and attorney's fees as the prevailing party under 23 O.S. § 72(B).

**WHEREFORE**, Plaintiff Southern Nazarene University respectfully requests that the Court enter judgment in its favor and against Defendant HES Facilities Management, LLC on this Count and award statutory damages of not less than three (3) times and up to ten (10) times the value of the timber injured as authorized by 23 O.S. § 72(A), together with reasonable attorney's fees and costs under 23 O.S. § 72(B), pre- and post-judgment interest as allowed by law, and such further and additional relief as the Court deems just and proper.

## COUNT VI – DECLARATORY RELIEF (28 U.S.C. §§ 2201–2202)

106.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

107.    An actual and justiciable controversy exists between the parties regarding the rights, duties, and legal obligations arising from the parties' contractual relationship and Defendant's application of federally regulated herbicides on Plaintiff's property.

108.    Specifically, Plaintiff contends, and is informed and believes, that Defendant HES violated applicable federal and Oklahoma law, including but not limited to, the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq*., and Oklahoma statutes and regulations governing pesticide application, by improperly applying HYVAR X-L IVM Herbicide (a restricted-use pesticide) in areas where its use is strictly prohibited and failing to disclose such use, in breach of its contractual duties.

109.    Plaintiff further contends that Defendant's conduct created a latent and continuing condition on Plaintiff's property that impairs SNU's full use, enjoyment, and restoration of its land and landscaping, and that Defendant is liable for all current and future harm stemming from that application.

110.    Plaintiff seeks a declaration of rights pursuant to 28 U.S.C. § 2201 that Defendant's application of HYVAR violated federal and state law; that Defendant breached its contractual and statutory obligations to Plaintiff; that Defendant is legally responsible for all past, present, and future damages, remediation costs, and restoration efforts necessary to return Plaintiff's property to its prior condition; and that Defendant is

obligated to fully disclose all chemicals applied to Plaintiff's property, including the timing, method, and precise location of each application.

111.    Such declaratory relief is necessary to clarify the parties' rights and obligations, guide future conduct, and avoid further injury to Plaintiff's property interests and regulatory compliance posture.

**WHEREFORE**, Plaintiff SNU respectfully requests that the Court enter a declaratory judgment in its favor pursuant to 28 U.S.C. § 2201, declare the rights and obligations of the parties as set forth above, and award such further and additional relief as the Court deems just and proper.

## V. PRAYER FOR RELIEF

**WHEREFORE**, premises considered, Plaintiff Southern Nazarene University respectfully requests that this Court enter judgment in its favor and against Defendant HES Facilities Management, LLC as follows:

A.  An award of actual and consequential damages in excess of $1,000,000.00 for the destruction of mature trees, permanent soil sterilization, loss of landscaped green space, emergency remediation measures, reputational injury, and other losses directly resulting from Defendant's wrongful conduct, with the precise amount to be determined at trial;

B.  Punitive damages in an amount sufficient to punish Defendant for its willful, wanton, reckless, and fraudulent acts, and to deter similar future misconduct, pursuant to 23 O.S. § 9.1;

C.  Statutory treble damages as authorized by 23 O.S. § 72(A), in an amount not less than three (3) times actual damages for the wrongful injury and destruction of Plaintiff's timber and vegetation;

D.  Declaratory relief under 28 U.S.C. § 2201, including a judicial determination that Defendant's use of HYVAR was unlawful and in breach of contractual and regulatory obligations, that Defendant is liable for all past, present, and future

remediation and restoration costs, and that Defendant must disclose the full extent and details of all chemical applications on Plaintiff's property;

E.  For pre- and post-judgment interest as provided by law;

F.  For all costs of this action, including reasonable attorney's fees where applicable; and,

G.  An award of all recoverable costs and reasonable attorney's fees, including those provided by statute, contract, or applicable law; and

H.  For such other and further relief as the Court deems just and proper.

**DATED**: this 18th day of July 2025.

Respectfully submitted,

s/ Travis Vernier
TRAVIS VERNIER, OBA NO.: 35253
LES BENNETT, JR., OBA NO.: 32352
AUSTIN VERNIER, OBA NO.: 35759
AUSTIN PROCTOR, OBA NO.: 31418
BENNETT VERNIER, PLLC
6116 Northwest 63rd Street
Warr Acres, Oklahoma 73132
Telephone: (405) 346-9800
Email: info@bennettvernier.com
*ATTORNEY FOR PLAINTIFF SNU*