# PLAINTIFF'S EHIBIT 2

*Southern Nazarene University v. HES Facilities Management, LLC*

# CUSTODIAL SERVICES AGREEMENT



211 South Jefferson Avenue
St. Louis, Missouri 63103
(800) 852-2388

PLAINTIFF'S EXHIBIT 2

**THIS CUSTODIAL SERVICES AGREEMENT** ("Agreement"), made and entered into this 1st day of July 2019, by and between

| | | |
|---|---|---|
| **WFF Facility Services, Inc.**<br><br>211 South Jefferson Avenue<br><br>St. Louis, Missouri 63103 | & | Southern Nazarene University<br><br>6729 NW 39th Expressway<br><br>Bethany, OK  73008 |
| (hereinafter referred to as "WFF") | | (hereinafter referred to as "Owner") |

**WHEREAS**, drawing upon its extensive experience in custodial services, WFF is prepared and desires to render Services for Owner described below pursuant to the terms and conditions of this Agreement; and

**WHEREAS**, Owner desires to retain WFF as an independent contractor to perform Services pursuant to the terms and conditions of this Agreement; and

**NOW, THEREFORE**, in consideration of the covenants and promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **CONTRACT DOCUMENTS**

    1.1 The Contract Documents consist of: (a) this Custodial Services Agreement; (b) Exhibit A—Proposal for Service; (c) Exhibit B—Insurance schedule; (d) any changes or modifications agreed to in writing after execution of this Agreement; and (e) any other Exhibits or Addenda set forth in Section 13, below. The Agreement and the documents attached hereto constitute the entire agreement between the Parties and supersede any and all prior oral or written agreements, negotiations, understandings or letters of intent. In the event any terms or conditions among the Contract Documents constituting this Agreement conflict, the terms and conditions of this Custodial Services Agreement shall control and prevail.

2. **STATUS & SERVICES**

    2.1 Owner and WFF acknowledge and agree that WFF is providing the Services hereunder as an independent contractor and not as an agent, partner, joint venturer, or employee of Owner, and that nothing herein contained shall be construed to create any other relationship between the Parties other than that of independent contractor. WFF agrees not to act or represent that it is acting as an agent of Owner or incur any obligation on behalf of Owner without the express written consent of Owner.

    2.2 WFF agrees to perform the Services described in detail in Exhibit A, attached hereto and made a part hereof by reference, in accordance with quality standards of cleanliness and appearance.

2.3   WFF will furnish all corporate and coordinating management, training and technical personnel, an on-site manager, and any special project personnel required to efficiently accomplish the Services. These personnel shall be the agents and employees of WFF and WFF shall be responsible for the payment of all salaries, wages, taxes, workers' compensation insurance and any other cost, expense, or charge levied or required by any federal, state or local laws relating to the employment of such personnel.

2.4   WFF will furnish, train, manage, and direct all personnel in the performance of their respective duties required to efficiently accomplish the Services.

2.5   WFF will provide the necessary supplies, materials and equipment for the proper performance of the Services described in detail in Exhibit A.

2.6   WFF will continue to subcontract any such services traditionally subcontracted by Owner unless otherwise agreed upon in writing by the Parties hereto prior to execution of this Agreement. WFF will solicit and submit to Owner any subcontractor bids for such services for Owner's review and approval. Owner shall be responsible for all costs and expenses of such subcontracted services.

2.7   WFF will design and implement a system that will differentiate daily from non-daily tasks, as well as coordinate the performance of all such tasks.

2.8   Owner will designate a Contract Manager who will oversee the performance of the contract, and be the point of contact for Owner requirements and negotiation as required by the terms of the Agreement.

3. **TERM**

3.1   The initial term of this Agreement shall be for a period of 5 years and will renew each year following the date upon which WFF begins to perform such Services, which shall be on July 1, 2019. After expiration of the initial term, this Agreement shall automatically renew from year to year provided the Parties reach an agreement on price adjustments (to be proposed/negotiated 60 days before each yearly anniversary) and any changes in the Services to be performed not less than 60 days prior to the expiration of the then current term of this Agreement.

4. **SAFE WORK ENVIRONMENT**

4.1   Owner will provide a safe workplace for WFF's Employees.

4.2   Owner will comply with all applicable federal, state and local health and safety laws, regulations, ordinances, directives and rules relating to the workplace environment.

4.3   Owner will cooperate with WFF, WFF's workers' compensation carrier, or any consultants which WFF hires in connection with workplace injuries.

4.4   WFF's workers' compensations carrier, and any consultants WFF hires, shall have the right to inspect Owner's workplace, including but not limited to any job sites to which Owner assigns WFF's Employees. To the extent possible, such inspections shall be scheduled at mutually convenient times.

4.5  WFF will comply with all applicable federal, state, and local health and safety laws, regulations, ordinances, directives and rules relating to providing the Services.

## 5. COVENANTS, REPRESENTATION AND WARRANTIES

5.1  Both Owner and WFF covenant and agree that during the term of this Agreement (including any renewal periods) and for a period of 2 years after the termination of this Agreement for any reason, neither Party, nor any of their respective affiliates, parent, subsidiaries, agents or contractors, will employ any WFF hired salaried management (current SNU staff brought over to WFF does not apply) of the other Party who were involved in any way with the performance of this Agreement, without the prior express written consent of that Party, which consent may be withheld for any reason.

5.2  Owner represents and warrants that, prior to the execution of this Agreement, Owner provide WFF a true and correct copy of any of the following with respect to the Owner's former employees who may end up employed by WFF to fulfill the Services contemplated by this Agreement: all collective bargaining, trust, non-competition, employment and consulting agreements, executive compensation, employee stock option and stock purchase, and group life, health and accident insurance and other similar plans, agreements, memoranda of understanding, arrangements or commitments to which Owner is a party or by which Owner is bound.

5.3  Owner represents and warrants to WFF that, prior to the effective date of the Agreement, Owner has complied with all applicable requirements of COBRA, as amended.

5.4  Owner shall give WFF not less than 30 days advance written notice of (i) any temporary or permanent shutdown of any facility, site of employment or employment unit; or (ii) any reduction in force resulting in the layoff of one-third or more of the persons working at any single facility, site of employment, or employment unit of Owner.

## 6. FEES

6.1  Owner agrees to pay WFF a Fee for the performance of the Services under this Agreement in the amount of eight hundred ninety-three thousand forty-eight dollars and no cents. ($893,048.00) per year, payable in equal monthly installments of seventy-four thousand four hundred twenty and sixty-seven cents. ($74,420.67) each. (These fees do not include the lot mowing program within the grounds program) WFF agrees to invoice Owner on the first day of each month and Owner agrees to pay the Invoice within 30 days of receipt thereof.

6.2  It is also agreed that, if at any time during the term of this Agreement, the minimum hourly wage is raised, or any federal, state, or local payroll or employee tax, levy or charge is increased, either of which event compels WFF to increase the hourly wage rate of employees it is using in connection with this Agreement, or causes WFF to remit greater taxes, levies or charges to the appropriate governing authority, then in that event, Owner shall enter into negotiations to amend the scope of services to assist in absorbing these additional costs.

6.3  The Fees are based upon the service area, frequency of Services and the supplies, materials, and equipment necessary to perform such Services specified in Exhibit A. If WFF is requested by Owner to change the nature, frequency or timing of the Services from that described in Exhibit A, or if the nature or performance of any of the Services listed in Exhibit A become more time consuming or labor intensive, or require more supplies, materials or equipment, than anticipated

or expected at the time the Parties executed this Agreement by virtue of any changes beyond WFF's control, the Parties agree to negotiate a reasonable Fee adjustment for WFF's performance of such Services within 30 days of WFF's notice to Owner of said situation.

6.4   In the event any Fee to be paid by Owner to WFF hereunder is not paid when due, said payment shall bear interest until paid equal to 10% per annum until paid in full.

7.  **INSURANCE REQUIREMENTS**

7.1   WFF agrees to obtain and maintain in effect at all times during the term of this Agreement and any renewal period, Comprehensive General Liability Insurance, Workers' Compensation Insurance and Umbrella Insurance in the amounts and limits described and set forth in Exhibit B, attached hereto and by this reference made a part hereof. WFF agrees to furnish Owner with a Certificate of Insurance for each such insurance coverage within 30 days after execution of this Agreement and to cause Owner to be listed as an additional named insured upon all applicable insurance policies. WFF further agrees to provide Owner with notice of any change in carrier and/or insurance coverage during the term of this Agreement.

*WFF POLICIES SHOULD BE PRIMARY AND NON-CONTRIBUTORY*

7.2   Each Party to this Agreement hereby waives any claim against the other Party, by way of subrogation or otherwise, which may arise during the term of the Agreement for personal injuries or death and/or for any and all loss of or damage to any of its property if such claim is covered by policies of insurance, to the extent that any damage or losses resulting from such claim are recovered under such policies of insurance.

8.  **DEFAULT**

8.1   Acts of default by Owner shall include, but are not limited to:

   8.1.1   failure to pay any Fee when due;

   8.1.2   commission or omission of any act that usurps any of WFF's rights or obligations as employer of its employee;

   8.1.3   violation of any provision of this Agreement;

   8.1.4   a material misrepresentation of a fact material to this Agreement;

   8.1.5   if Owner is dissolved in bankruptcy as provided in 10.4.

8.2   Owner shall reimburse WFF for all actual expenses, fines, fees, costs, and liabilities which WFF incurs as a result of Owner's default, including but not limited to reasonable attorneys' fees, court costs and related expenses.

9.  **INDEMNIFICATION**

9.1   Subject to the terms and conditions set forth in Section 9.3, WFF shall indemnify, hold harmless, and defend OWNER and its managers, officers, directors, employees, and agents (collectively "OWNER Indemnitee") from and against any and all losses, damages, liabilities, deficiencies,

judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including professional fees and reasonable attorneys' fees (collectively "Losses"), that are incurred by OWNER Indemnitee resulting from any third party claim, suit, action or proceeding (each an "Action") arising out of or resulting from:

    **9.1.1** bodily injury, death of any person or damage to real or tangible property resulting from the willful, fraudulent, or negligent acts or omissions of WFF or its employees; and

    **9.1.2** WFF's breach of any representation, warranty or obligation of WFF set forth in this Agreement or Exhibit A.

**9.2** OWNER shall indemnify, hold harmless, and defend WFF and its managers, officers, directors, employees, and agents (collectively "WFF Indemnitee") from and against any and all losses, damages, liabilities, deficiencies, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including professional fees and reasonable attorneys' fees (collectively "Losses"), that are incurred by WFF Indemnitee resulting from any third party claim, suit, action or proceeding (each an "Action") arising out of or resulting from:

    **9.2.1** bodily injury, death of any person or damage to real or tangible property resulting from the willful, fraudulent, or negligent acts or omissions of OWNER or its employees; and

    **9.2.2** OWNER's breach of any representation, warranty or obligation of OWNER or its employees as set forth in this Agreement.

    **9.2.3** OWNER'S indemnity shall be limited to its pro rata share for any losses, and no more.

    **9.2.4** WFF's indemnity shall be limited to its pro rata share for any loses, and no more.

**9.3** Exceptions on Indemnification. Notwithstanding anything to the contrary in this Agreement, OWNER and WFF agree that:

    **9.3.1** WFF is not obligated to indemnify, hold harmless, or defend OWNER Indemnitee from and against any Action or corresponding Losses incurred by OWNER Indemnitee arising out of or resulting from a slip hazard or unreasonably dangerous condition located on OWNER's premises which was not created by WFF and is outside the scope of WFF's obligations under Exhibit A; and

    **9.3.2** WFF is not obligated to indemnify, hold harmless, or defend OWNER Indemnitee from and against any Action or corresponding Losses incurred by OWNER Indemnitee arising out of or resulting from a slip hazard or unreasonably dangerous condition located on OWNER's premises that was not created by WFF but is within the scope of WFF's obligations under Exhibit A, unless WFF, or its employee, was first notified of the slip hazard or unreasonably dangerous condition and WFF is negligent in failing to remove the slip hazard or unreasonably dangerous condition.

**9.4** WFF agrees to indemnify and hold harmless on a primary and non-contributory basis the owner against any and all claims for bodily injury and property damage arising out of contractor operations including bodily injury to their employees or subcontractors and/or their property.

## 10. INDEMNIFICATION PROCEDURES

**10.1** Notice of Third-Party Claims. The party seeking indemnification ("Indemnified Party") shall give indemnifying party ("Indemnifying Party") prompt written notice (a "Claim Notice") of any Action, Losses or discovery of facts on which Indemnified Party intends to base a request for indemnification under Section 9. Each Claim Notice must contain a description of the third-party claim and the nature and amount of the related Losses (to the extent that the nature and amount of the Losses are known at the time). Indemnified Party shall furnish promptly to Indemnifying Party copies of all papers and official documents received in respect of any Losses.
Indemnifying Party's duty to defend applies immediately, regardless of whether Indemnified Party has paid any sums or incurred any detriment arising out of or relating, directly or indirectly, to any third-party claim.

**10.2** Indemnified Party Control of Defense. Notwithstanding anything to the contrary in Section 10, Indemnified Party may defend an Indemnified Claim with counsel of its own choosing and without the Indemnifying Party's participation if:

**10.2.1** the Indemnified Claim seeks only an injunction or other equitable relief against Indemnified Party; or

**10.2.2** Indemnified Party reasonably believes:

**10.2.2.1** that there are one or more legal or equitable defenses available to it that are different from or in addition to those available to Indemnifying Party; and

**10.2.2.2** counsel for Indemnifying Party could not adequately represent the interest of Indemnified Party because such interest could be in conflict with those of Indemnifying Party; or

**10.2.2.3** such action or proceeding involves, or could have a material effect on, any material matter beyond the scope of the indemnification or defense obligations of Indemnifying Party.

**10.3** Settlement of Indemnified Claims by Indemnifying Party. Indemnifying Party shall give prompt written notice to Indemnified Party of any proposed settlement of an Indemnified Claim. Indemnifying Party may not, without Indemnified Party's prior written consent, which Indemnified Party shall not unreasonably withhold, condition, or delay, settle or compromise any indemnification-related claim or consent to the entry of any indemnification-related judgment unless such settlement, compromise, or consent:

**10.3.1** includes an unconditional release of Indemnified Party from all liability arising out of such claim;

**10.3.2** does not contain any admission or statement suggesting any wrongdoing or liability on behalf of Indemnified Party; and

**10.3.3** does not contain any equitable order, judgment, or term (other than the fact of payment or the amount of such payment) that in any manner affects, restrains, or interferes with the business of Indemnified Party.

10.4   Settlement of Indemnified Claims by Indemnified Party. Indemnified Party may not settle or compromise any claim or consent to the entry of any judgment regarding which it is seeking indemnification hereunder without the prior written consent of Indemnifying Party, which Indemnifying Party shall not unreasonably withhold, condition, or delay, unless:

   10.4.1  if the Indemnified Claim is one for which Indemnified Party properly gave Indemnifying Party a Claim Notice under Section 10.1, and Indemnifying Party fails to assume the defense or refuses to defend the Indemnified Claim under Section 10.2; or

   10.4.2  such settlement, compromise, or consent:

      10.4.2.1  10.7.1.1 includes an unconditional release of Indemnifying Party from all liability arising out of such claim;

      10.4.2.2  does not contain any admission or statement suggesting any wrongdoing or liability on behalf of Indemnifying Party; and

      10.4.2.3  does not contain any equitable order, judgment, or term (other than the fact of payment or the amount of such payment) that in any manner affects, restrains, or interferes with the business of Indemnifying Party.

## 11.  AMENDMENT AND TERMINATION

   11.1   Amendments. This Agreement may be amended from time to time as agreed by the Parties in writing. The Parties agree to amend this Agreement as necessary upon a change in law that makes any provision hereof impossible to perform or which significantly changes the cost of performance. Any amendments shall become effective on the designated date after the amendment is signed by both Parties.

   11.2   Termination. If WFF fails to perform the Services in accordance with this Agreement, Owner shall inform WFF in writing setting forth the specific areas of non-performance. If WFF fails to substantially correct such non-performance within 20 working days from receipt of said notice, or if WFF fails to develop a corrective action plan within this time period which is thereafter approved by Owner, Owner may thereafter terminate this Agreement by giving 30 days written notice to WFF. WFF retains the right to terminate this Agreement either with or without cause by giving the Owner 30 days' advance written notice of termination. Upon an act of default by Owner, as set forth in Section 8, WFF shall have the option, in its sole and absolute discretion, to terminate the Agreement immediately with written notice. In the event WFF exercises such option, this Agreement shall terminate on the date that written notice is delivered to Owner.

   11.3   Dissolution/Bankruptcy. This agreement shall automatically terminate if a petition for bankruptcy is filed by or against Owner, if Owner shall have made an assignment for the benefit of creditors, if Owner shall have been voluntarily or involuntarily adjudicated bankrupt by any Court of competent jurisdiction, if a petition is filed for reorganization of Owner, if a receiver shall have been appointed for all or a substantial part of Owner's business (or if Owner shall have permitted or suffered any attachment, levy or execution to be made or levied against all or a substantial part of the property of Owner), if Owner is dissolved, or upon Owner's nonpayment of taxes on property or insurance premiums required hereunder. In the event this Agreement shall terminate as provided in this Paragraph, WFF shall be entitled to collect from Owner or its successor all Fees and charges due and unpaid hereunder up to and including the date of such termination.

## 12. MISCELLANEOUS

**12.1** Resolution of Disputes. Owner and WFF shall make every attempt to resolve any disputes or differences concerning this Agreement in an amicable manner. In the event, however, that a resolution is not attained, Owner and WFF agree that in any action between the Parties under this Agreement or otherwise arising out of the relationship, the Parties agree to waive trial by jury and instead agree to submit the dispute to a Judge for adjudication.

**12.2** Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective legal representatives, involuntary and voluntary successors and permitted assigns.

**12.3** Assignment. Neither Owner nor WFF shall assign this Agreement or their rights and duties hereunder, or any interest herein, without prior written consent of the other Party.

**12.4** Attorneys' Fees. The prevailing party in any action arising in respect to the Agreement shall be entitled to recover from the other Party all cost of such action including, without limitations, reasonable attorney's fees, court costs and related expenses.

**12.5** Choice of Law. This Agreement shall be governed by the laws of the State of Oklahoma.

**12.6** Entire Agreement. This Agreement, including all Addenda or Exhibits attached hereto and executed by both Parties, contains the entire Agreement of the Parties and supersedes any and all agreements, whether written or oral, with respect to its subject matter. No amendment or modification hereto shall be valid unless in writing and signed by both Parties hereto. Failure by either Party at any time to require performance by the other Party shall not prejudice either Party regarding any subsequent action.

**12.7** Severability. If any provision of this Agreement, or any amendment thereof, is or should become invalid, then such invalid or unenforceable part or parts shall be deemed to be held separate and severable, and the remaining provisions of this Agreement shall continue in full force and effect to the extent possible.

**12.8** Notices. Any notice or communication required or permitted by this Agreement shall be given in writing and addressed as follows:

| If to Owner | If to WFF |
| --- | --- |
| Dr. Scott Strawn | Mr. Jonathan Campbell, President |
| Southern Nazarene University | WFF Facility Services |
| 6729 NW 39th Expressway | 211 South Jefferson Avenue |
| Bethany, OK 73008 | St. Louis, Missouri 63103 |

Notice shall be served personally, by facsimile, overnight express mail service, or first class mail, postage prepaid. If served personally or by facsimile, notice shall be deemed delivered upon

receipt. If mailed by overnight express mail service, notice shall be deemed delivered 24 hours after mailing. If mailed by first class mail, then notice shall be deemed delivered 72 hours after mailing. Either Party may give notification to the other Party in any manner described above for change of address for the sending of notices.

12.9 **Waiver.** A delay or failure on the part of any Party in exercising any right or remedy shall not operate as a waiver of such right or remedy or any other right or remedy. A waiver on any one occasion shall not be construed as a bar to or a waiver of any right or remedy on any future occasion. Every right and remedy of a Party shall be cumulative and in addition to every other right and remedy expressed in this Agreement or allowed by law or equity and may be exercised singularly or concurrently.

12.10 **Limitation on Damages.** Notwithstanding anything herein or in any other Agreement or document to the contrary, Owner expressly agrees that WFF's liability, under any circumstances, shall be limited to a maximum of $5,000 (five thousand dollars), for the costs associated with re-keying or re-coring of buildings arising in connection to lost or stolen keys; provided however, that WFF will comply with Owner security policies regarding keys and reporting of any loss or theft of keys.

12.11 **Headings.** The headings herein contained are for purposes of identification only and shall not be considered a part of, nor used in construing, this Agreement.

13. **ADDENDA AND EXHIBITS**

    13.1 The following Addenda and Exhibits, as indicated by "X", are attached to this Agreement and incorporated herein by reference for all purposes:

| EXHIBIT | Attached |
|---|---|
| Exhibit A—Proposal for Services | X |
| Exhibit B—Insurance Schedule | X |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK]**

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the day and year first above written.

| Accepted By Owner | Accepted By WFF |
|---|---|
| Signed: [signature]    Dated: 5/13/2019 | Signed: TCepBell    Dated: 5-23-19 |
| Printed Name: Scott W Strawn | Printed Name: JONATHAN CAMPBELL |
| Title: VP for Business + Finance, CFO | Title: PRESIDENT |

15154788.2

11 | Page