IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SOUTHERN NAZARENE UNIVERSITY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-25-802-D |
| HES FACILITIES MANAGEMENT, LLC, | ) ) ) ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Defendant HES Facilities Management, LLC's (HES) Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support [Doc. No. 14], to which Plaintiff Southern Nazarene University (SNU) responded [Doc. No. 15]. HES did not file a reply. The matter is fully briefed and at issue.

**BACKGROUND**

In this action, SNU alleges that HES was entrusted with the maintenance of SNU's Bethany campus when HES allegedly applied a federally restricted herbicide known as HYVAR X-L IVM to SNU's grounds. According to SNU, HYVAR was "[a]pplied in areas where its use is expressly prohibited," and its application "poisoned soil, decimated mature trees and landscaping, and inflicted lasting damage on the ecological and aesthetic integrity of SNU's campus." [Doc. No. 10, at 1-2].

SNU brings claims against HES for breach of contract (Count 1), negligence (Count 2), recklessness and gross negligence (Count 3), negligent misrepresentation and

1

constructive fraud (Count IV), fraud/actual fraud (Count V), wrongful injury to timber under OKLA. STAT. tit. 23, § 72 (Count VI), and declaratory relief (Count VII). Before the Court is HES' Motion to Dismiss [Doc. No. 14], arguing that the Court should dismiss SNU's claims under FED. R. CIV. P. 12(b)(1) and (6).

## STANDARD OF DECISION

Pursuant to FED. R. CIV. P. 12(b)(1), a motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Pueblo of Jemez*, 790 F.3d at 1148 n.4. In reviewing a facial attack, a district court must accept the allegations in the complaint as true. *Id.* In a factual attack, the moving party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id.* When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Id.* Instead, the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.* Here, HES presents a factual attack because it challenges the facts upon which SNU bases subject matter jurisdiction. Specifically, HES argues that SNU is barred from pursuing an action for damages because it failed to comply with the statutory, jurisdictional prerequisites set forth in OKLA. STAT. tit. 2, § 3-82D.

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Pursuant to FED. R. CIV. P. 8(a)(2), a complaint must contain "a short and plain statement… showing that the pleader is entitled

2

to relief." Dismissal is proper "if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *MacArthur v. San Juan Cnty.*, 497 F.3d 1057, 1064 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In determining whether SNU has stated a plausible claim against HES, the Court ignores "labels and conclusions" and a "formulaic recitation of the elements of a cause of action," neither of which are entitled to a presumption of truth. *Twombly*, 550 U.S. at 555.

**ANALYSIS**

I.    **Compliance with OKLA. STAT. tit. 2, § 3-82D**

HES first contends that Plaintiff is barred from pursuing an action for damages by failing to comply with OKLA. STAT. tit. 2, § 3-82D, which is part of Oklahoma's Combined Pesticide Law. Section 3-82D provides:

> A. Prior to filing an action against an applicator for damages to growing crops or plants, any person alleging damages to growing crops or plants shall:
>
> 1. Within ninety (90) calendar days of the date that the alleged damages occurred or prior to the time that twenty-five percent (25%) of the allegedly damaged crops or plants are harvested, whichever occurs first, file a written complaint statement with the Department [of Agriculture, Food and Forestry] regarding the alleged damages….

3

> B. Any person failing to comply with subsection A of this section shall be barred from filing an action for damages against the applicator.

OKLA. STAT. tit. 2, § 3-82D.

HES contends that SNU's entire action is barred because SNU did not file a timely written complaint with the Oklahoma Department of Agriculture, Food and Forestry (ODAFF) prior to bringing suit. According to HES, the mature trees and landscaping on SNU's campus are not "growing crops" or "timber," so they must fall into "Section 3-82D's frustratingly undefined other category of 'plants'." [Doc. No. 14, at 9]. In response, SNU asserts that Section 3-82D does not apply to its mature trees and landscaping given that the statute contains no reference to timber, trees, forestry, grass, shrubs, or landscaping. Rather, SNU asserts that "growing crops or plants" clearly refers to items such as agricultural harvests, row crops, or cultivated nursery stock, not SNU's campus trees and landscaping.

The Court is not convinced, at this stage of proceedings, that Section 3-82D applies to the mature trees and landscaping on SNU's campus. For its argument that Section 3-82D should apply to bar SNU's claims, HES cites to *Olmstead v. Reedy*, 387 P.2d 631 (Okla. 1963) and *Short v. Jones*, 613 P.2d 452 (Okla. 1980). In *Olmstead*, the plaintiffs alleged damage to "their growing crops, pecan trees, shade trees and ornamental shrubs." *Olmstead*, 387 P.2d at 632. However, *Olmstead* involved a previous version of Section 3-82D, which version did not limit the statute's application to "growing crops or plants." *Id.*

In *Short*, the plaintiff alleged damages to forty acres of pecan-bearing trees, leaving them permanently barren. 613 P.2d at 454. At the time of the decision, the previous version of Section 3-82D had been amended to apply only to "annual crops or plants." *Id.* at 455.

4

The court found that the statute "refers to annual plants when speaking of notice of damage, and that section does not apply by its very terms to damage to real property a part of which is the timber growing thereon." *Id.* "To hold the provisions of [Section 3-82(d)] appl[y] to instances where trees are permanently injured would be to ignore the historically well established dichotomy between timber and annual crops; between real property and personal property." *Id.* Frankly, nothing in *Olmstead* or *Short* aids HES' argument that the mature trees and landscaping on SNU's campus constitute "growing crops or plants" as contemplated by Section 3-82D.

As stated above, the Court is not persuaded that SNU's campus trees and landscaping qualify as "growing crops or plants" as contemplated by Section 3-82D. HES further argues that SNU complained to the ODAFF about HES' alleged HYVAR application, and the ODAFF responded that "to seek compensation for damages, a complaint must be filed within 90 days of noticing the damage to the growing crops or plants or before 25% of the crops or plants are harvested." [Doc. No. 14-1]. The ODAFF's reference to Section 3-82D does not change the Court's determination on this issue. And the ODAFF's specific reference to a date "before 25% of the crops *or plants are harvested*" strengthens the Court's understanding that "growing crops or plants" would not encompass the trees, grass, and landscaping on SNU's campus. For these reasons, the Court declines to find that Section 3-82D bars SNU's action against HES.

## II.    Statute of Limitations – Negligence

HES next contends that the statute of limitations has run on SNU's negligence claim against HES. "Typically, facts must be developed to support dismissing a case based on the

5

statute of limitations." *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022). To that end, a statute of limitations defense may be resolved on a Rule 12(b) motion "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Herrera*, 32 F.4th at 991 (citation omitted). "Indeed, it is only proper to dismiss a complaint based on an affirmative defense when the complaint itself admits all the elements of the affirmative defense." *Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019).

The parties agree that, under Oklahoma law, a two-year statute of limitations applies to SNU's negligence claim. *See* OKLA. STAT. tit. 12, § 95(3). HES contends that the statute of limitations began to run in "mid to late spring of 2023," when a pre-emergent fertilizer was applied. Alternatively, HES asserts that the limitations period began to run when a weed-control chemical was known to be applied to the campus's football facilities. And, because SNU did not bring this action until July 18, 2025, HES argues that SNU's negligence claim is barred by the statute of limitations. Finally, HES argues that the discovery rule should not apply in this case because "the toxicity of potential pesticides is common knowledge." [Doc. No. 14, at 11].[1]

Upon viewing the allegations of the Amended Complaint, the Court finds that SNU's negligence claim is not subject to dismissal. Based on SNU's allegations, factual

---

[1] For the proposition that pesticide toxicity is common knowledge so as to not trigger the discovery rule, HES cites to *Daugherty v. Farmers Coop. Ass'n*, 689 P.2d 947 (Okla. 1984). However, that case involved a *plaintiff's* application of a defendant's pesticide product, from which the plaintiff suffered near-immediate medical ailments, and "[t]he first physician plaintiff contacted diagnosed the problem as pesticide toxicity" within a month of the plaintiff using the product. *Id.* at 948. *Daughtery* does not support HES' broad assertion that the discovery rule should not be applied in cases involving the application of pesticides/herbicides.

development is needed as to when SNU's negligence claim accrued. SNU alleges that "[o]nly through SNU's own investigation in 2023 and into 2024 did the truth emerge … [that] HYVAR had been unlawfully deployed in landscaped and recreational areas, contrary to federal labeling restrictions, state licensing requirements, and industry standards." [Doc. No. 10, at ¶ 4]. SNU further asserts that its claim did not begin to accrue until, as alleged in the Amended Complaint, SNU discovered a box of HYVAR on campus on July 20, 2023. *Id.* at ¶ 89. The allegations of the Amended Complaint do not "make it clear" that SNU's right to bring a negligence action against HES had been extinguished prior to the date SNU initiated this action on July 18, 2025. For these reasons, HES' motion to dismiss will be denied on this point.

### III.   Fraud

HES next asserts that SNU's fraud claim should be dismissed for SNU's failure to distinguish its fraud claim from its breach of contract claim. Under Oklahoma law, "[w]here a party sues on a theory of breach of contract, it cannot also bring a claim alleging fraud unless the tortious act is sufficiently independent of the breach of contract." *McGregor v. Nat'l Steak Processors, Inc.*, No. 11-CV-570, 2012 WL 314059, at *3 (N.D. Okla. Feb. 1, 2012) (internal quotation marks omitted). In determining whether the claims are sufficiently distinct, courts consider whether the facts supporting each claim—and the claimed damages—are different. *See Key v. Exxon Mobil Corp.*, 508 F. Supp. 3d 1072, 1086 (E.D. Okla. 2020).

For its fraud claim against HES, SNU alleges that HES deliberately concealed its application of HYVAR on SNU's campus, that HES agents made materially false

representations that they did not know the cause of the tree discoloration on SNU's campus, and that HES "represented that [it] had retained at least one outside expert and would provide a written report concerning tree damage." [Doc. No. 10, at ¶¶ 219-39]. "In reliance on [HES' Senior Vice President Jesus] Mendez's assurance that a professional report would be provided, SNU deferred commissioning its own expert report for several weeks, during which the scope of the injury worsened, and mitigation costs increased." *Id.* at ¶ 230. SNU alleges that these communications were "collateral acts of fraud designed to mislead SNU about the true cause of the ongoing environmental damage," "conceal HES' misconduct, lull SNU into inaction, and avoid responsibility." *Id.* at ¶¶ 231, 234.

In response to HES' argument that SNU's fraud and breach of contract claims are duplicative, SNU provides that its "contract claim is based on HES' negligent or reckless spraying of HYVAR, a soil sterilant, in violation of its service agreement." [Doc. No. 15, at 17]. "The fraud claim arises from different conduct: HES represented in early July 2023 that it 'did not know' the cause of the tree distress, while simultaneously suppressing and concealing its HYVAR use, and later withholding application logs and a promised report." *Id.* SNU further contends that HES' fraud "delayed SNU's full discovery of the true cause, compounded the losses, necessitated outside investigation, and supports punitive damages, remedies unavailable in contract." *Id.*

Based on the allegations of SNU's Amended Complaint, and viewing the facts and inferences in SNU's favor at this stage of proceedings, the Court finds that SNU has sufficiently pled a fraud claim separate and distinct from its breach of contract claim. Although it is entirely possible that a portion of SNU's alleged damages for its fraud claim

may overlap with the damages for its breach of contract claim, at this early pleading stage, SNU has sufficiently pled two separate causes of action.

### IV.     Breach of Contract

Next, HES contends, briefly, that SNU's breach of contract claim should be dismissed for failure to state a claim because HYVAR is not explicitly mentioned in the parties' contract. Under Oklahoma law, to establish a breach of contract, a plaintiff must show: (1) the formation of a contract; (2) breach of the contract; and (3) damages as a result of the breach. *See Cates v. Integris Health, Inc.*, 412 P.3d 98, 103 (Okla. 2018).

For SNU's breach of contract claim, the Amended Complaint alleges that "[a] valid and enforceable contract existed between [SNU] and [HES] for grounds maintenance services, including herbicide application"; that "[HES] breached that contract … by applying a prohibited herbicidal agent or agents in violation of labeling guidelines, regulations, and the contract's express and implied terms"; and that "[a]s a direct and proximate result of [HES'] breach, [SNU] has suffered substantial damages, including but not limited to the death and destruction of trees, grass, shrubs, associated landscaping, as well as consequential loss related to campus aesthetics and property value[.]" [Doc. No. 10, at ¶¶ 187-89].

HES does not provide any legal authority for the proposition that the specific herbicide (HYVAR) must have been explicitly named in the parties' contract for SNU to allege that HES breached its groundskeeping/landscaping contract with SNU. Viewing the allegations of the Amended Complaint in SNU's favor, the Court finds that SNU has sufficiently pled a breach of contract claim against HES.

## V.    Wrongful Injury to Timber (OKLA. STAT. tit. 23, § 72)

HES further argues that SNU's "claim" for wrongful injury to timber, under OKLA. STAT. tit. 23, § 72, should be dismissed for failure to state a claim. However, the wrongful injury to timber statute merely provides a measure of damages—it does not contemplate a separate cause of action. *See Hayes v. Northeast Okla. Elec. Coop., Inc.*, 512 P.3d 1261, 1273 (Okla. Civ. App. 2022) ("Title 23 O.S. § 72 is a statute that addresses the amount of damages that may be awarded for wrongful injury to timber. Clearly, wrongful injury to timber is not a separate claim for relief, but merely an element and measure of damages."). A Rule 12(b)(6) motion tests the sufficiency of a claim; it is not a proper mechanism for challenging a form of damages. *See Sab One, Inc. v. Travelers Indem. Co. of Conn.*, No. CIV-14-1089-R, 2014 WL 6687310, at *1 (W.D. Okla. Nov. 26, 2014) ("[P]unitive damages are a remedy, not a claim subject to dismissal."); *see also Koeller v. Cyflare Sec., Inc.*, No. CIV-25-410-MTS, 2025 WL 3280316, at * 2 (E.D. Mo. Nov. 25, 2025) (internal quotations and citation omitted) (declining to address a request for statutory treble damages on a 12(b)(6) motion "because treble damages, like punitive damages, are a form of relief and thus not a claim subject to a Rule 12(b)(6) motion to dismiss."). For these reasons, the Court declines to dismiss SNU's request for damages under OKLA. STAT. tit. 23, § 72 at this stage of proceedings.

## VI.    Declaratory Relief

Finally, HES contends that SNU's request for declaratory relief is merely seeking a finding of liability on the merits of its breach of contract claim and should be dismissed. According to the Amended Complaint, SNU seeks a declaratory judgment that "[HES']

use of HYVAR XL (or another similar chemical) was unlawful and in breach of contractual and regulatory obligations; that [HES] is liable for all past, present, and future damages, remediation, and restoration costs; and that [HES] must fully disclose the identity, quantity, timing, and location of all chemicals applied to [SNU's] property." [Doc. No. 10, at 56].

Upon consideration, the Court agrees with HES that SNU's request for declaratory relief should be dismissed. "[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). But district courts have "'unique and substantial discretion' in determining whether to declare the rights of litigants[.]" *United States v. City of Las Cruces*, 289 F.3d 1170, 1179-80 (10th Cir. 2002) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995)).

District courts often look to a five-factor test when evaluating whether they should exercise discretionary jurisdiction over a declaratory action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to res judicata'; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (quoting *State Farm Fire & Cas Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

Here, factors three and four appear irrelevant; however, the other factors weigh against the Court exercising jurisdiction. First, the requested declaratory relief would not settle the controversy since SNU seeks damages beyond a declaration that HES' application of HYVAR was unlawful and in breach of the contract. *See Monahan v. Crestbrook Ins. Co.*, No. 23-2457-JWB, 2024 WL 68376, at *1 (D. Kan. Jan. 5, 2024) ("The declaratory relief would not settle the controversy, as Plaintiffs seek relief, i.e., damages, beyond a declaration of coverage in their breach of contract claim."). Second, there does not appear to be "any issue for resolution by declaratory relief that cannot be resolved in the context of [SNU's] separate claim for breach of contract." *Golf Club, L.L.C. v. Am. Golf. Corp.*, No. CIV-16-946-D, 2017 WL 1655259, at *2 (W.D. Okla. May 2, 2017); *see also Monahan*, 2024 WL 68376, at *1 ("The declaratory relief does not serve a useful purpose because it seeks a determination already sought in the breach of contract claim: whether [the] [p]laintiffs' insurance policy covers the purportedly weather-related property damage."). Third, "the breach of contract cause of action is a better remedy because it provides [SNU] more comprehensive relief should [its] claim be found meritorious." *Monahan*, 2024 WL 68376, at *1. Accordingly, SNU's claim for declaratory relief is dismissed.

## CONCLUSION

For these reasons, Defendant HES Facilities Management, LLC's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support [Doc. No. 14] is **GRANTED in part** and **DENIED in part**. SNU's claim for declaratory relief is dismissed, and SNU's remaining claims survive dismissal.

**IT IS SO ORDERED** this 10th day of April, 2026.

TIMOTHY D. DeGIUSTI
Chief United States District Judge